IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILFREDO ZAYAS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARK A. KRYSEVIG, et al. | : | NO. 08-556 |

REPORT AND RECOMMENDATION

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

DATE: 4/15/08

This is a *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by an individual currently incarcerated at the State Correctional Institute at Cresson, Pennsylvania. For the reasons that follow, I recommend that the petition be denied.

I.   Factual and Procedural Background

On July 28, 1996, at around 4:00 a.m., a seventeen-year old girl appeared at her local police station to report a rape. Commonwealth v. Zayas, C.P. 00-05-1363, Transcript of Motion to Dismiss (C.C.P. Phila. Jan. 25, 2001) at 25. The victim reported that she was in the house of a woman she knew socially, babysitting that woman's children. At approximately 11:00 p.m., the father of one of these children appeared at the door, and asked to come in and check on his son. Commonwealth v. Zayas, May Term 2000, 1363 (C.C.P. Phila. Jul. 1, 2003) at 1. After the man, who identified himself as "Will", saw his child, he talked to the victim for a while, and then raped her, holding a sharp object to her neck. Id. at 2.

Officer Hilliard, the police officer who interviewed the victim found her credible, relating that she was "distraught," crying and shaking. Transcript of Motion to Dismiss, at 26, 39-40. The victim gave the police officer the address where the rape took place, a physical description of "Will", and the first name of the mother, which was "Meline." Id. at 27-29. Nevertheless,

Officer Hilliard never contacted Meline to determine the identity and/or whereabouts of the father of Meline's son. Id. at 28, 39. Officer Hilliard was promoted in 1997, and her files were transferred. Id. at 31-32.

On January 21, 2000, the victim was interviewed a second time, by a Sgt. Michael Dougherty. Id. at 49. At that time, the officer showed the victim a snapshot of petitioner, Wilfredo Zayas. Id. He had found that snapshot in the victim's file, with Zayas's name and address written on scratch paper, but he did not know who put it there, or when. Id. at 49-50. The victim identified Zayas in a photo array. Id. at 54. The next day, Sgt. Dougherty was transferred away from the special victims unit, and so did not arrest Zayas. Id. at 51-52. Although there was also a hospital rape kit in the victim's file, dating from the night of the rape, no effort was made to take DNA from Zayas. Id. at 48, 77-78.

Finally, on April 17, 2000, Zayas was arrested for this crime. Commonwealth v. Zayas, decision of July 1, 2003, supra at 2. At the pre-trial stage, Zayas filed a motion to dismiss the case against him, arguing that the delay in arresting him violated his federal and state Due Process rights. A hearing was held on that motion on January 25, 2001. Id. at 3.

Zayas testified at the hearing that the delay prejudiced him in that he was now unable to locate Danny Hernandez, a friend he had known since Danny "was a baby." Commonwealth v. Zayas, C.P. 00-05-1363, Transcript of Motion to Dismiss, supra, at 58. According to Zayas, Danny Hernandez told him that he had "confronted" the rape victim at Meline's house the day after she had accused Zayas of rape. Id. at 59.

2

According to Zayas: "Basically, [what Hernandez] said was that he caught her in a whole bunch of lies ... She didn't say nothing about rape. She said I disrespected her in Meline's house and Danny confronted her and she admitted that I did not disrespect her. It was nothing about me trying to rape her or nothing like that." Id. at 60. The conversation took place in front of Meline, and a few of her women friends, but, by the time of the 2000 hearing, Meline had died. Id.

Zayas did not specifically testify that he had searched for Danny Hernandez. When questioned by his lawyer, he stated: "My mom told me that Danny is in a halfway house." Id. at 61. His lawyer then asked: "To this day, have you been able to locate Danny Hernandez?" and he replied: "No." Id.

In response to questioning from the judge, Zayas testified:

THE COURT: We're asking about people living today.

ZAYAS: It's Danny. It don't know where he's at. I told you what I heard.

THE COURT: According to your mother?

ZAYAS: Right, in a drug rehab or halfway house.

THE COURT: His last name is Hernandez?

ZAYAS: Right, and I'm not scared that you go look for him. I wish you find him, too, if that's what you implying.

Id. at 69. Apparently, the trial court denied the motion without writing an opinion at that time.

On July 23, 2001, Zayas was tried without a jury on charges of Rape, Terroristic Threats, Simple Assault and Corruption of Minors. Id. at 1. He was convicted on all charges. Id. The trial court subsequently sentenced Zayas to an aggregate sentence of ten to twenty years, to run concurrently. Id.

Zayas then appealed his conviction. The related subjects of his appeal were:

> 1. Did the police act recklessly by failing to act for over four years when there was no impediment to them doing so and no new evidence located? and
>
> 2. Did [Zayas] suffer actual prejudice when a witness whose testimony would have been critical to his defense [was] unavailable at trial due to the delay?

Commonwealth v. Zayas, No. 2677, EDA 2002 (Super. Ct. Aug. 13, 2004) at 2-3.

At this point, the trial court authored an opinion addressing the subjects of Zayas' appeal. Id. The court evaluated his claims by reference to Commonwealth v. Scher, 569 Pa. 284 (2002), a state case which establishes a standard for state and federal due process rights in connection with a delay in arrest. Under Scher, a defendant must first prove a pre-arrest delay that was the product of intentional, bad faith, or reckless conduct by the prosecution; he must then show that he was actually prejudiced.

The trial judge commented that he was "not impressed" with the police work in the case. However, he did not reach a specific finding as to whether the police had been reckless, basing his decision on a conclusion that Zayas had not been prejudiced. The trial judge wrote:

> The defendant took the stand during the hearing in an attempt to demonstrate that he was prejudiced by the inability to locate Danny Hernandez whom he described as a crucial witness. The court evaluated the substance of the Hernandez evidence as the defendant related it during his testimony. Essentially, Hernandez would testify that he confronted the victim and she told him the defendant disrespected her on the night of the rape. This evidence is not inconsistent with the victim's claim of rape. The court concluded that the defendant was not prejudiced by the absence of Mr. Hernandez.

Id. at 4. (Obviously, the court erred, since the victim was supposed to have said that Zayas did *not* disrespect her, but this is irrelevant since, as discussed below, the matter was als addressed by the Superior Court, which did not repeat this error).

4

The trial court judge also wrote that he found Zayas's testimony incredible, because "he claimed to remember visiting Meline's house to see his son on the night of the rape but could not remember whether or not he had sex with the victim." Id. This was an accurate recapitulation of Zayas's testimony. ("I am saying I was there, yeah, but he asking me did I have sex with her but I don't remember." Transcript, supra, at 67).

The Superior Court denied Zayas's appeal. It wrote that Zayas had not shown prejudice because he had not shown how Danny Hernandez's testimony would have exculpated him:

> Hernandez was not a witness to the events of the evening of the rape. Rather, Hernandez purportedly spoke to [the rape victim] the following day, at which time [she] allegedly stated that Zayas did not "disrespect her." The content of Hernandez's purported testimony is at best ambiguous. Consequently, Zayas has not proven actual prejudice as a result of the pre-arrest delay.

Id. at 6.

The Superior Court also found that Zayas had not proven that Hernandez was unavailable:

> Zayas's testimony demonstrated that his mother had information concerning Hernandez's whereabouts. Zayas failed to provide any information concerning what efforts, if any, he undertook to locate Hernandez. Rather, Zayas provided only a bald allegation that Hernandez could not be located.

Id.

Lastly, the Superior Court relied upon the trial court's specific finding that Zayas was not credible: "Because Zayas relied solely upon his own testimony, which the trial court did not find credible, Zayas failed to prove that he was prejudiced as a result of the pre-arrest delay." Id. at 7.

According to Zayas, he sought a writ of *certiorari* in the United States Supreme Court but his petition was denied. Petition at ¶ 9(f). He also filed a PCRA petition, claiming violation

of his right to a speedy trial and of due process, and also claiming ineffective assistance of counsel. Id. at ¶¶ 10-11. It was denied after a hearing. Id. The PCRA court's decision was affirmed by the Pennsylvania Superior Court on January 17, 2008. Id.

In his present petition for habeas corpus relief, Zayas once again argues that his rights to a speedy trial and to due process were violated by the police's delay in arresting him. Id. at ¶ 12. Specifically, he argues that the police had enough evidence to arrest him much earlier than 2000, and that this shows that their delay was intentional, and not merely "negligent and reckless." Id. He also alludes briefly to "the prejudice that [trial counsel] argued and pointed out to the court." Id.

II.  Discussion

As the Commonwealth has conceded, Zayas has raised a cognizable claim, even though he has cited only to Scher, supra, a state case. Scher concerned both the state and federal constitutions, and it is clear that Zayas is arguing that his federal right to due process, under the Fifth and Fourteenth Amendments, was violated based upon the delay in bringing criminal charges against him.

The United States Supreme Court has said that statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide the primary guarantee against bringing overly stale criminal charges. United States v. Lovasco, 431 U.S. 783, 789 (1976), citing United States v. Marion, 404 U.S. 307 (1971). The statute of limitations for rape in Pennsylvania is five years. 18 Pa. C.S.A. § 3121.

Nevertheless, a petitioner such as Zayas, who was arrested within the limitations period, can show a due process violation if he can demonstrate (a) actual prejudice, and (b) that the

government intentionally delayed the arrest to gain a tactical advantage over him, or with reckless disregard of circumstances known to the prosecution which created a probable prejudicial impact upon the defendant's ability to defend against the charges. 431 U.S. at 795 and n. 17; and see U.S. v. Eight Thousand, Eight Hundred and Fifty Dollars, 461 US 555, 563 (1983).

Moreover, a habeas court cannot overturn the Pennsylvania Superior Court's rejection on the merits of Zayas's essentially identical claim under Scher, unless its decision was contrary to, or involved an unreasonable application of, Lovasco, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) and (2).

Arguably, the Superior Court's decision that Zayas failed to show that Danny Hernandez's testimony would have been exculpatory was based on an unreasonable determination of the facts. Although the Superior Court seemed confused by the exact parameters of "disrespecting" a woman, the clear import of the victim's conversation with Hernandez (as reported by Zayas) was that a rape had not taken place. It is inconceivable that the victim meant that Zayas had not treated her with disrespect but had, nevertheless, raped her.

Despite this, however, Zayas has not shown prejudice because he has not shown that Danny Hernandez was unavailable in 2000. As the Superior Court correctly noted, Zayas relied at the hearing upon only a bald assertion that he could not find Hernandez, and also conceded that his mother had some information as to Hernandez's location. Zayas also said that he had known Hernandez since he was a baby, so that he might have been expected to know how to find at least one of Hernandez's relatives to get more information. In his habeas petition, Zayas does not address this issue in any detail, or describe any efforts to locate Hernandez.

7

Instead, in his habeas petition, Zayas has argued that the police acted intentionally in failing to arrest him until four years after the rape. This claim, however, is clearly without merit. There is no evidence whatsoever to support an inference that the police delayed arresting Zayas in order to prejudice his defense. Neither is there any evidence that the police were reckless within the meaning of Lovasco, i.e., that they knew Danny Hernandez was likely to become unavailable and nevertheless delayed their arrest of Zayas.

On the contrary, the testimony at Zayas's hearing shows that the delay was caused by utterly impersonal negligence. If this negligence approached recklessness, the police were reckless toward the victim's rights, and not Zayas.' This is clear in the Defender's examination of Officer Hilliard:

> DEFENDER: Did it dawn on you, Officer, in your 16 years experience, having the name, Meline, having the address where the alleged rape occurred, that all you had to do was get in your car and go to that house?
>
> OFFICER: No.
>
> DEFENDER: Had you gone to the house and if you had talked to Meline, that maybe Meline might have given you a photograph of the person who was the father of her child. I guess you didn't think about that either, did you, Officer?
>
> OFFICER: No.
>
> DEFENDER: I guess it didn't dawn on you that you could go to that house and ask Meline, "Where is the person named Will?" I guess that didn't dawn on you either, did it? Yes or no.
>
> OFFICER: No.
>
> DEFENDER: All right. Then, basically, what you're saying is that you didn't find this victim particularly credible; right?
>
> OFFICER: Wrong.

. . .

> DEFENDER: And this 17 year old, you were not concerned enough about her that you couldn't find the time the next day to get in a car to go to the house to find Meline?
>
> OFFICER: I can't say that I was available for work the next day.

Commonwealth v. Zayas, C.P. 00-05-1363, Transcript of Motion to Dismiss, supra, at 39-40.

The testimony continued in that vein, with the Defender establishing that Officer Hilliard did no further work on the case. Id. at 40-44. Further, Sgt. Dougherty testified that he was transferred the day after he spoke to the victim, and did not "have a chance to do an affidavit for a warrant or anything." Id. at 52.

Zayas does not make any representation in his petition for habeas corpus relief that would add to this. He relies only upon the same evidence his lawyer elicited at the hearing:

> [T]his is not just a situation where there was just this person, Will, who she knew nothing about, which is their argument as to why they could not follow up their investigation and make an arrest, but they not only had a first and last name, address, physical description and photograph of the Defendant ... they had to receive that information from somebody, so that it was more than just a complaining witness just saying that it was somebody named Will whose kid she was babysitting.

Petition at 12A. This simply emphasizes the fact that the police were negligent.

Because Zayas cannot show that he was prejudiced by the delay in arresting him, nor can he show that the government intentionally delayed his arrest to gain a tactical advantage, or with reckless disregard of circumstances known to the prosecution which created a probable prejudicial impact upon his ability to defend himself, he has not shown that his Due Process rights were violated by the delay.

9

**The petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.**

IV.  Conclusion

Based on the foregoing, I make the following:

## RECOMMENDATION

AND NOW, this 15 day of April, 2008, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be DENIED. There is no basis for the issuance of a certificate of appealabilty.

BY THE COURT:

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE